UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 16-130-JJB-EWD |
| *versus* : | |
| : | |
| JORDAN HAMLETT : | |

**UNITED STATES' POST-HEARING OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS**

The United States opposes Jordan Hamlett's (hereinafter, the "Defendant") motion to suppress. *See* Doc. 19. The Defendant contends, first, that agents violated his *Miranda* rights, and, second, that his statements were involuntary. Both arguments should be rejected, and the motion denied in its entirety.

**I.   BACKGROUND**

On September 13, 2016, the Defendant unlawfully attempted to obtain the federal tax information of then-presidential candidate Donald J. Trump from the U.S. Department of Education and Internal Revenue Service using the web application Federal Student Aid – Datashare. The attempt was unsuccessful. About a month later, on October 27, 2016, the defendant agreed to be interviewed by federal law enforcement agents. The interview took place in the large atrium of the Embassy Suites in Baton Rouge.

**II.   LAW AND ARGUMENT**

The Defendant's motion should be denied in its entirety for two reasons: first, agents were not required to *Mirandize* the Defendant, and, second, his statements were voluntary.[1]

---

[1] According to his motion, the Defendant only seeks to suppress the verbal statements he made on October 27, 2016. *See* Doc. 19. In the event he seeks to exclude any other evidence or raises any issues not explicitly set forth in his original motion—e.g., defense counsel asked about tricks and subterfuge at the hearing (Tr. 25:8-26:1; 29:22-30:1)—the United States reserves its right to respond accordingly.

**A.     There was no *Miranda* violation because the Defendant was not in custody at the time of his interview**

      **1.     *Miranda* custody**

*Miranda* warnings must be given prior to interrogation only when a suspect is in custody. *See Stansbury v. California*, 511 U.S. 318, 322 (1994) ("An officer's obligation to administer *Miranda* warnings attaches . . . only where there has been such a restriction on a person's freedom as to render him in custody."). A suspect is in custody only when he is formally arrested or when the restraint on his freedom of movement is of the degree associated with formal arrest. *J.D.B. v. North Carolina,* 564 U.S. 261, 270 (2011). On the other hand, when a suspect is not in custody, *Miranda* does not apply and no warnings need be given. *Id.* at 268-71.

In determining whether a suspect is in custody, the court asks whether a reasonable person would have felt at liberty to terminate the interrogation and leave. *United States v. Coleman*, 610 Fed. Appx. 347, 353 (5th Cir. 2015). "The reasonable person through whom [the court] view[s] the situation must be neutral to the environment and to the purposes of the investigation—that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances." *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988) (en banc). "[T]he subjective views harbored by either the interrogating officers or the person being questioned are irrelevant." *United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2015).

Determining whether a suspect is in custody for *Miranda* purposes is an objective inquiry that depends on the totality of the circumstances. *United States v. Wright*, 777 F.3d at 774-75. Important factors include: (1) the length of the questioning, (2) the location of the questioning, (3) the accusatory, or non-accusatory, nature of the questioning, (4) the amount of restraint on the individual's physical movement, (5) and statements made by officers regarding the

individual's freedom to move or leave (hereinafter, collectively the "*Wright* factors"). *Id.* at 775. No one fact is determinative. *Id.*

"It is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing." *United States v. De La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). In the *Miranda* context, the defendant bears the burden of proving that he was in custody. *United States v. Webb*, 755 F.2d 382, 390 (5th Cir. 1985); *United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984) (concluding that the defendants failed to meet their burden of proving that they were in custody at the time their statements were taken) (overruled on other grounds).[2]

### 2. Given the totality of the circumstances, the Defendant was not in custody at the time of his interview

Given the totality of the circumstances, the Defendant cannot carry his burden of proving that he was in custody at the time of his interview. Accordingly, agents were not required to *Mirandize* the Defendant, and thus there could not have been a *Miranda* violation.

As far as the location of the interview, it took place in a public area, in the large atrium of the Embassy Suites in Baton Rouge. *Motion to Suppress Hearing Transcript* (hereinafter, "Tr."), 8:1-11:15. There were a number of people in the area and it was busy. Tr. 9:3-13. The Defendant, having been to the hotel once or twice before, was familiar with the location (Tr. 42:24-43:4), and Government Exhibits 1-3 and 5-6 illustrate just how open the large atrium area was. This factor weighs in favor of the Government. *See, e.g.*, *United States v. Ortiz*, 781 F.3d 221, 231 (5th Cir. 2015) ("The fact that an interview takes place in a public location weighs against the conclusion that a suspect is in custody.").

---

[2] In the event the Defendant carries his burden of proving he was in custody, the burden shifts to the Government to show that he knowingly, voluntarily, and intelligently waived his *Miranda* rights. *North Carolina v. Butler*, 441 U.S. 369 (1979). The burden does not shift in this case because the Defendant cannot carry his initial burden.

Next, the nature of the questioning was not accusatory. Tr. 16:11-18 (testimony that agents did not make any accusations during the interview). Instead, the agents testified that the Defendant was cooperative and that their interview of him was conversational, friendly, and congenial. Tr. 13:1-6; 16:11-18; 36:7-23. As one agent put it, it was "almost like friends talking in a sense." Tr. 18:2-8. Towards the end of the interview, the Defendant told agents that he wanted to fully cooperate with law enforcement, and that he was trying to do everything he could to cooperate. Tr. 19:8-13. Furthermore, the Defendant himself testified on cross-examination that he was being cooperative with the agents, and that the agents were polite and courteous at all times. Tr. 52:5-13. This factor also weighs in favor of the Government.

As far as the amount of restraint on the Defendant's physical movement, there was none. The Defendant was not physically restrained at any point during the interview, there were no handcuffs, and there was nothing obstructing the Defendant's path had he decided to leave. Tr. 19:14-24; 48:20-21. Additionally, the agents testified that aside from shaking the Defendant's hand, no physical contact was made with the Defendant. Tr. 48:17-19. This factor weighs in the Government's favor.

As far as the next *Wright* factor, the agents told the Defendant that he was free to move about. In particular, they told him he was welcome to take any breaks, and, tellingly, the Defendant did in fact take breaks, one of which was a smoke break he asked to take. Tr. 18:9-18; 29:8-12; 49:12-50:14; 52:24-53:3. Agents also asked the Defendant where he preferred to be interviewed: in a private hotel room or the lobby area. Tr. 12:6-14; 48:9-12. The Defendant chose to be interviewed in the atrium area rather than the private hotel room. Tr. 12:15-19; 38:18-20; 48:13-16. Furthermore, the agents never told the Defendant that he could not leave; he was instead free to go at all times. Tr. 24:20-22; 36:24-37:1. Significantly, the Defendant

4

himself admitted on cross-examination that he knew he could have left had he wanted to do so. *See* Tr. 50:21-51:11. This factor, like the others, weighs in the Government's favor.

As to the length of the interview, although it lasted a few hours (Tr. 29:2-7), there is no *per se* rule regarding the length of questioning. *See Wright*, 777 F.3d at 775. Furthermore, breaks were taken during the interview, and, importantly, the Defendant himself chose to resume the interview after taking a smoke break. Tr. 50:11-20. Considering the friendly atmosphere of the conversation, and that breaks were taken during the interview—which breaks the Defendant chose to take—the length of the interview does not weigh against the Government in this case.

Other important facts illustrate that the Defendant was not in custody. The Defendant is a 31-year-old (Tr. 42:7-8) private investigator (Tr. 42:9-10) who owns and operates an investigative agency. Tr. 6:2-4. By the time of the interview, the Defendant had been a private investigator for about nine years (Tr. 47:19-21), and significantly, through his work as a private investigator, he had become familiar and had discussions with law enforcement, including the FBI and sheriff's office. Tr. 47:22-48:8. He also knew he could have left the interview had he wanted to do so. *See* Tr. 50:21-51:11. No reasonable person standing in the Defendant's shoes could claim that he felt he "was [not] at liberty to terminate the interrogation and leave."[3] *United States v. Coleman*, 610 Fed. Appx. at 353. The Defendant cannot carry his burden of showing that he was in custody during his interview.

---

[3] Since the defendant was not formally arrested on October 27, 2016, he can only claim that he was in custody because the restraint on his freedom of movement was of the degree associated with formal arrest. *See J.D.B. v. North Carolina,* 564 U.S. at 270.

### B. The Defendant's statements were voluntary

A confession is admissible only if it was voluntary. *See Dickerson v. United States*, 530 U.S. 428, 434 (2000). A confession is voluntary if it was made "in the absence of official overreaching, in the form either of direct coercion or subtle forms of psychological persuasion." *United States v. Rojas-Martinez*, 968 F.2d 415, 418 (5th Cir. 1992). In determining whether a suspect's statements were voluntary, a court must ask whether, under the totality of the circumstances, law enforcement officials obtained the evidence by overbearing the will of the accused. *Dickerson v. United States*, 530 U.S. at 433-34.

In order for a confession to be involuntary, there must have been "coercive police activity." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Coercive police activity requires more than deceptive tactics. *See, e.g.*, *United States v. Crawford*, 372 F.3d 1048, 1060-61 (9th Cir. 2004) (finding the defendant's confession voluntary even though police used a deceptive tactic to induce the defendant to come to the FBI office and speak about an old bank robbery); *see also United States v. Rojas-Martinez*, 968 F.2d at 418 ("Expressions of sympathy by an officer are not coercive."). The focus is on whether law enforcement's techniques were "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). The Government bears the burden of proving the voluntariness of a confession by a preponderance of the evidence. *Lego v. Twoney*, 404 U.S. 477, 489 (1972).

First, as illustrated above, because the Defendant was not in custody at the time of his interview, there is no cause to view his admissions with suspicion. *See United States v. Fazio*, 914 F.2d 950, 956 (7th Cir. 1990) ("In contrast to the presumption of coercion that attends statements given during custodial interrogation in the absence of *Miranda* warnings, statements made during a noncustodial interrogation are not viewed with suspicion.").

Other important facts show that agents did not overbear the will of the Defendant, and that, instead, the Defendant exercised his free will throughout the interview. It was the Defendant who elected to speak with agents (e.g., Tr. 14:6-12), and it was the Defendant who decided that it would take place in the large atrium area and not the private hotel room. Tr. 12:15-19; 48:9-16. It was the Defendant who decided he would take breaks during the interview (e.g., Tr. 49:12-50:14), and, importantly, it was the Defendant who, after taking his smoke break, chose to resume the interview. Tr. 50:11-20. Significantly, the Defendant chose to resume the interview despite knowing that he could have left instead. *See* Tr. 50:21-51:11.

The Defendant is a 31-year-old who, by virtue of his nine years as a private investigator, was familiar and had discussions with various law enforcement agencies, including the FBI. He is about 6'3" and weighs 230 pounds (Tr. 6:5-8), and his conversation with agents was conversational, friendly, and congenial, not confrontational. Tr. 13:1-6; 14:25-15:7; 16:11-18; 36:7-23. There were only two agents that the Defendant recognized (Tr. 43:18-25),[4] and both were in suits and immediately identified themselves to him. Tr. 13:7-10; 33:3-9. The agents never drew their guns or pointed them at the Defendant, they did not pat him down, they spoke in lower voices, and they did not make any promises or attempt to coerce him. Tr. 13:18-24; 14:25-15:7; 20:17-23. The Defendant immediately volunteered that he had committed the crime (Tr. 15:23-16:3), and he even sounded proud of what he had done. Tr. 16:4-10. He wanted to cooperate with the agents, and the Defendant stated as much toward the end of his interview.[5]

---

[4] Other agents were present but operating in a covert capacity. Tr. 28:13-23.

[5] Although the agents discussed search warrants and possible charges with the Defendant, importantly, this took place towards the end of the interview. Tr. 20:24-21:5; 34:3-25; 51:12-17. Additionally, the conversation was still friendly at that point. Tr. 21:6-10.

Tr. 19:8-13.  Furthermore, during his cross-examination, the Defendant admitted that he was cooperative with agents, and that the agents were polite and courteous at all times.[6]  Tr. 52:5-13.

In sum, there was no coercive police activity, the Defendant's will was not overborne, and law enforcement's techniques were not "so offensive to a civilized system of justice that they must be condemned."  *Miller v. Fenton*, 474 U.S. at 109.  The Government has carried its burden of proving that the Defendant's statements were voluntary.

### III.    CONCLUSION

The Defendant's motion should be denied: first, the agents were not required to *Mirandize* the Defendant because he was not in custody, and, second, his statements were voluntary.

UNITED STATES OF AMERICA, by

J. WALTER GREEN
UNITED STATES ATTORNEY


/s/ Ryan Rezaei
Ryan Rezaei, CABN 285133
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone: (225) 389-0443
Fax: (225) 389-0561
E-mail: ryan.rezaei@usdoj.gov

---

[6] The Defendant continued to work with authorities following the subject interview, *see* Tr. 21:11-24:19, suggesting that his interview with the agents on October 27, 2016, was positive.

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 16-130-JJB-EWD |
| *versus* : | |
| : | |
| JORDAN HAMLETT : | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the *United States' Post-Hearing Opposition To Defendant's Motion To Suppress* was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsels for the defendant by operation of the court's electronic filing system.

Baton Rouge, Louisiana, on this 15th day of May, 2017.

/s/ Ryan A. Rezaei
Ryan A. Rezaei
Assistant United States Attorney