UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

JORDAN HAMLETT

CRIMINAL ACTION

NO. 16-130-JJB-EWD

## RULING

This matter is before the Court on a Motion to Suppress (Doc. 19) brought by the Defendant, Jordan Hamlett. The Government filed an Opposition (Doc. 21). An evidentiary hearing was held on the Motion on March 9, 2017. Both parties submitted post hearing memoranda (Docs. 27-1 and 30). For the reasons stated below, the Defendant's Motion is **DENIED**.

I.  FACTUAL FINDINGS[1]

The Defendant is charged in a one count indictment with violating 42 U.S.C. § 408(a)(7)(b), false representation of a social security number. In September 2016, the Defendant allegedly attempted to obtain the federal tax information of then-presidential candidate Donald J. Trump from the U.S. Department of Education and Internal Revenue Service using the web application Federal Student Aid-Datashare. The attempt was unsuccessful.

About a month later, on October 27, 2016, the Defendant was interviewed by two special agents—Samuel Johnson ("Johnson") of the U.S. Treasury Inspector General for Tax Administration and Glenn Methvyn ("Methvyn") of the FBI at the Embassy Suites Hotel in Baton Rouge, LA. The Defendant has been working as a private investigator for almost a decade. The agents posed as potential clients to induce the Defendant to come to the hotel.

---

[1] The Court describes the credible evidence that was introduced at the hearing. "The judge's role at a suppression hearing is to determine the credibility of witnesses and find the facts. At a suppression hearing, it is 'well within the trial court's discretion' to weigh the evidence and make credibility determinations regarding conflicting testimony." *United States v. Jones*, 187 F.Supp.3d 714, 723 (M.D. La. 2016) (citing *Norman v. Stephens*, No. H–13–0624, 2013 WL 6498979, at *21 (S.D. Tex. Dec. 11, 2013)).

1

The agents approached Hamlett as he was entering the lobby. They were wearing suits and did not show the Defendant their weapons. They identified themselves as law enforcement officers and requested to speak with Hamlett about a sensitive matter. The agents said that they could speak with him in the lobby or they could speak in a hotel room. Hamlett chose to be interviewed in the lobby. While Hamlett was initially apprehensive, he relaxed after sitting down with the agents. The agents advised Mr. Hamlett that he was free to take breaks at any time. Although the agents did not specifically tell Mr. Hamlett he was free to leave, they both testified that he was free to leave at any time. Additionally, the agents did not advise Mr. Hamlett of his *Miranda* rights.

The interview was friendly and conversational, and Mr. Hamlett was cooperative the entire time. During the interview, Mr. Hamlett volunteered that he was the individual who tried to access then-presidential candidate Donald J. Trump's tax returns. He volunteered this information relatively quickly. The agents had not even accused the Defendant of any wrongdoing yet. Although the agents had a search warrant for Hamlett's phone, they obtained Hamlett's consent to search the phone prior to revealing the existence of the warrant. In addition to getting Hamlett to sign a consent form, they also served the search warrant on him in case he decided to withdraw his consent.

The interview lasted about two hours. After the first hour, Mr. Hamlett went outside to smoke accompanied by one of the agents. After the smoke break, Mr. Hamlett returned and continued speaking with the officers. He took a second break to retrieve his phone charger from his car accompanied by one of the agents. He returned and continued speaking with the agents. At the end of the interview, Mr. Hamlett asked some questions about the next steps. The agents told him that he had violated federal law, that the investigation was ongoing, and that a search warrant

was being executed at his residence. Mr. Hamlett continued to tell the officers that he wanted to fully cooperate.

A few days later, on October 31, 2016, Mr. Hamlett agreed to participate in another interview. He met with two agents. Following that second interview, Mr. Hamlett sent agents two unsolicited e-mails. The e-mails explained in more detail why he was trying access the tax returns.

## II. DISCUSSION

The Defendant argues that his statements should be suppressed for two reasons. First, he argues that the agents violated his *Miranda* rights at the October 27, 2016 interview. Second, he argues that his confession / statements were involuntary. The Court finds both of these arguments unpersuasive. The agents were not required to *Mirandize* the Defendant because he was not in custody, and all of his statements were voluntary.

### A. There was no *Miranda* violation because the Defendant was not in custody during the interview.

*Miranda* warnings only have to be given prior to "custodial interrogation."[2] "Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody."[3] A suspect is in custody for *Miranda* purposes when he is formally arrested, or when the restraint on his freedom of movement is of the degree associated with a formal arrest.[4]

Whether a suspect is in custody is an objective determination.[5] A court must determine whether a reasonable person would have felt at liberty to terminate the interrogation and leave.[6] "The reasonable person through whom [the court] view[s] the situation must be neutral to the environment and to the purposes of the investigation—that is, neither guilty of criminal conduct

---

[2] *United States v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015).
[3] *Id.* (quoting *United States v. Salinas*, 543 Fed. App'x 458, 462 (5th Cir. 2013)).
[4] *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011).
[5] *Wright*, 777 F.3d at 774.
[6] *Id.* (citation omitted).

3

and thus overly apprehensive nor insensitive to the seriousness of the circumstances."[7] The subjective views of both the questioning agents and the suspect are irrelevant.[8]

When analyzing whether a suspect is in custody, a court must look at the totality of the circumstances.[9] Although no one factor is determinative, a court should consider the following non-exhaustive factors: (1) the location of the questioning; (2) the accusatory, or non-accusatory, nature of the questioning; (3) the length of the questioning; (4) the amount of restraint on a defendant's physical movements; and (5) statements made by officers regarding the defendant's freedom to move or leave ("*Wright* factors").[10]

In the context of *Miranda*, the Defendant bears the burden of proving that he was in custody.[11] Given the totality of the circumstances, the Court finds that the Defendant has failed to carry his burden of proving that he was in custody during the interview.

The first *Wright* factor, location of the questioning, weighs strongly in favor of the Government. The fact that an interview takes place in a public location weighs against the conclusion that the suspect was in custody.[12] The Defendant was questioned in a large, busy, open area of the Embassy Suites Hotel.

The second factor, whether the questioning was accusatory or non-accusatory, also weighs strongly in favor of the Government. The conversation was cooperative, conversational, and friendly. During his cross-examination, the Defendant testified that the agents were courteous to him at all times and that he was fully cooperating.

---

[7] *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988).
[8] *Wright*, 777 F.3d at 775.
[9] *Id.* at 774.
[10] *Id.* at 775.
[11] *United States v. Webb*, 755 F.2d 382, 390 (5th Cir. 1985).
[12] *United States v. Ortiz*, 781 F.3d 221, 231 (5th Cir. 2015).

The third factor, the length of the questioning, is neutral. While a longer interview is generally consistent with a custodial interrogation, there is no *per se* rule regarding when an interview becomes custodial.[13] Although the interview lasted a few hours, Mr. Hamlett took at least two breaks during the process and he chose to resume the interview after a smoke break. This cuts against a finding that the longer interview was converted into a custodial interrogation.

The fourth factor, the amount of restraint on the Defendant's physical movements, weighs against the conclusion that he was in custody. The Defendant was not handcuffed, nor was he physically blocked from leaving. The agents did not physically restrain the Defendant in any way.

The fifth factor, statements made about the Defendant's freedom to move or leave, weighs in favor of a finding that the Defendant was in custody, but only slightly. Statements by officers that an interview is "non-custodial" or that a suspect is "free to leave" are relevant to a *Miranda* analysis, but there is no magic word that determines whether an interview is non-custodial.[14] All of these types of statements must be "analyzed for their effect on a reasonable person's perception, and weighed against opposing facts."[15] This factor cuts in favor of a finding that Hamlett was in custody because the agents never explicitly told him he was free to leave, and one of the agents accompanied him on his breaks.

The Court finds that the first, second, and fourth factors weigh overwhelmingly in favor of a finding that the Defendant was not in custody when he made various admissions to the agents. Given the fact that they were in public, no restraints were used, and the tone of the conversation was congenial, a reasonable person would have felt at liberty to leave. This finding is bolstered by

---

[13] *Wright*, 777 F.3d at 775.
[14] *United States v. Cavazos*, 668 F.3d 190, 195 (5th Cir. 2012) ("The Government places significant emphasis on the fact that the agents informed Cavazos that the interview was 'non-custodial.' Such statements, while clearly relevant to a *Miranda* analysis, are not a 'talismanic factor.'").
[15] *Id.*

the fact that the Defendant, a private investigator for almost a decade who was familiar with law enforcement tactics, admitted that he knew he could have left the interview if he wanted to. The Defendant has failed to show that he was in custody at the time he made various statements. Accordingly, no *Miranda* violation occurred.

      **B.**    **The Defendant's statements were voluntary.**

The Defendant's second argument is that his confession / statements should be excluded because they were involuntary. The Government bears the burden of proving the voluntariness of a confession by a preponderance of the evidence.[16]

If a confession is the product of the accused's "free and rational choice," such a confession is voluntary.[17] Furthermore, a confession is voluntary when made "in the absence of official overreaching, in the form of either direct coercion or subtle forms of psychological persuasion."[18] Law enforcement techniques are considered "coercive" when they are "so offensive to a civilized system of justice that they must be condemned."[19] An officer's tactics are not considered coercive where he merely uses trickery to induce the suspect to show up at a certain location.[20] Additionally, "[i]n contrast to the presumption of coercion that attends statements given during custodial interrogation in the absence of *Miranda* warnings, statements made during a noncustodial interrogation are not viewed with suspicion."[21]

The Government has met its burden of showing that Hamlett's statements were the product of free will, and they were not the product of coercive agent activity. The Defendant chose to speak

---

[16] *Lego v. Twomey*, 404 U.S. 477, 489 (1972).
[17] *United States v. Anderson*, 755 F.3d 782, 790 (5th Cir. 2014).
[18] *United States v. Rojas-Martinez*, 968 F.2d 415, 418 (5th Cir. 1992).
[19] *Miller v. Fenton*, 474 U.S. 104, 109 (1985).
[20] *See United States v. Crawford*, 372 F.3d 1048, 1060-61 (9th Cir. 2004) ("Trickery, deceit, even impersonation do not render a confession inadmissible, certainly in noncustodial situations and usually in custodial ones as well, unless government agents make threats or promises." (citation omitted)).
[21] *United States v. Fazio*, 914 F.2d 950, 956 (7th Cir. 1990) (citation omitted).

with the agents. He chose to sit down with the agents in the lobby instead of going to the hotel room. He chose to take various breaks, and returned to speak with the agents after his break. The officers were courteous, did not use any physical restraints, and did not make any threats. Additionally, the Defendant almost immediately volunteered that he had committed the crime before being accused of anything. In light of these facts, his statements were not the product of psychological coercion or overreaching.

### III.    CONCLUSION

For the reasons stated above, the Court finds that *Miranda* warnings were unnecessary as the Defendant was not in custody and his statements were voluntary. Accordingly, the Defendant's Motion to Suppress (Doc. 19) is **DENIED**.

Signed in Baton Rouge, Louisiana, on June 6, 2017.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**